MORRIS WEINBERG, Plaintiff, *v.* RODGERS & HAGERTY, INC., Defendant.*

(Supreme Court, Kings Special Term, January, 1917.)

Injunctions — action for, restraining defendant from using land as general store yard — nuisance — damages — judgments — statutes.

It was the legislative intent (Laws of 1888, chap. 583, as amended by Laws of 1897, chap. 702; Laws of 1901, chap. 30) to restrict "Eastern Parkway" in the borough of Brooklyn, as a residential street, and one in purchasing a lot thereon, upon which he erects an apartment house, has a right to assume that said street will continue as a private, residential section and that there will not be erected upon adjoining property obnoxious factories, buildings, or machinery which create a nuisance.

After plaintiff, the owner of a plot of land on said "Eastern Parkway," had erected an apartment house thereon, defendant, having contracted for excavating and building a portion of the Eastern Parkway subway, purchased a lot immediately adjoining plaintiff's property and is using it as a general store yard for timber, steel, machinery, sand, crushed stone and such materials as it requires for the construction of the subway. In an action for an injunction to restrain the operation of defendant's plant it appears that the operation of the engines and boilers causes clouds of steam and vapor and other substances to enter the apartments of plaintiff making the use and occupation thereof physically uncomfortable to him and his tenants, disturbing their peace and their quiet, and as a result the rental value of the apartments has decreased and plaintiff's property has diminished in value; that the operation of a concrete mixer and locomotive engines and cars causes continually loud, grinding and jarring noise and vibration. *Held,* that the defendant may not escape liability for damage caused to plaintiff, upon the ground that it is engaged in a great public work conducted in a careful and prudent manner.

*Affirmed by Appellate Division. 179 App. Div. ——.

That while plaintiff has suffered greater damage than he should be compelled to suffer for the benefit of the public, yet to enjoin defendant from the use of his property would be a delay in a great public improvement and a tremendous cost to defendant for the erection and construction of other store yards or other places in which the work could be carried on, and plaintiff will be given judgment permanently restraining defendant from using its property in violation of plaintiff's rights, unless it pays such damages as may be found to reasonably compensate plaintiff for his loss.

ACTION for an injunction.

Simon H. Kugel, for plaintiff.

Leslie, Francoeur & McMahon (George H. Francoeur, of counsel), for defendant.

CALLAGHAN, J. The plaintiff is the owner of property situated on Eastern Parkway in the borough of Brooklyn, fifty-one feet wide and extending through the block to Union street. There are erected upon that plot two four-story apartment houses, one fronting on Eastern Parkway and the other on Union street. The apartment on Eastern Parkway has seventeen separate apartments with from three to eight rooms in each apartment and the Union street apartment is divided into fifteen apartments with from four to nine rooms in each apartment. Subsequently to the time these houses were built the defendant, which has a contract for excavating and building a portion of the Eastern Parkway subway, purchased a lot immediately adjoining plaintiff's lot. That lot has a frontage of about 139 feet on Eastern Parkway and a like frontage on Union street. The distance from Eastern Parkway to Union street is 220 feet, which is the depth of this lot. These properties are situated between Schenectady and Utica avenues. That portion of the subway in which the defendant is engaged

in building extends from New York avenue to Buffalo avenue, and consists of from 6,500 to 7,000 feet.

The defendant has inclosed its lot with a high board fence and is now using that plot of land as a general store yard for timber, steel, machinery, sand, crushed stone and such materials as it requires for the construction of the subway. It has erected three structures — a blacksmith shop, a tool shop and a building to inclose the steam boiler and engine; also a structure about thirty-six feet high in which it has installed a concrete mixer. It also operates a compressed air plant from which compressed air is used in the construction of the subway at such places as are necessary for the carrying on of the work. The concrete used for the entire subway is taken from the concrete mixer upon this plot, and in fact this plot is the only place where defendant stores its materials and does such work as is necessary to carry on the entire work of constructing the subway. This site was selected by the defendant as a convenient location for its plant. The public authorities charged with the duty of laying out and supervising the construction of the subway had nothing to do with the selection of the site. The defendant operates locomotive engines for the purpose of conveying the materials from the yard to the different points of the subway, and various work is carried on from eight o'clock in the morning till five o'clock at night, while the fires in the boilers are started at five o'clock in the morning. It appears that, from the operation of the engines and boilers, clouds of steam and vapor are blown into plaintiff's apartment houses; and the work in the blacksmith shop, the operation of the concrete mixer and the hauling of the materials by the engines, cause a continuous, loud and jarring noise.

There is little or no contradiction in the testimony,

and an examination of the premises made by me, pursuant to the stipulation of the parties, shows these conditions. It appears from the testimony of the defendant and from an examination of the premises that the defendant has done all which could be required of it to reduce the noise caused by the operation of this plant. In fact no negligence in operation or construction is alleged or proven, but, from the nature of the work carried on, it can readily be seen that the condition existing is almost intolerable; and the plaintiff contends that the operation of this plant upon private property should be restrained, upon two grounds: *First,* because Eastern Parkway is a street restricted by an act of the legislature (Laws of 1888, chap. 583, as amd. by Laws of 1897, chap. 702, and Laws of 1901, chap. 30), against a nuisance of this character; and *second,* because it creates a nuisance.

There is no disputing the proposition that the carrying on of this work and the erection of the various structures are in direct violation of the spirit and letter of the statute restricting Eastern Parkway, but defendant contends that, inasmuch as these structures are only temporary, they do not come within the contemplation of that restriction. Such a construction of this statute would mean that a soap factory or other obnoxious manufacturing plant might be temporarily erected along Eastern Parkway and be immune from removal. It was the intention of the legislature, no doubt, to restrict Eastern Parkway as a residential street, and plaintiff in purchasing land and erecting apartments thereon had a right to assume that the Parkway would continue as a private residential section and that he would not have obnoxious factories or buildings or machinery which creates a nuisance erected upon the adjoining property.

It cannot be successfully maintained, I take it, that

the carrying on of this work in the manner described would not constitute a nuisance.

I am convinced that the operation of this plant does create a nuisance, and it needs no citation of authorities to establish this conclusion. The operation of the concrete mixer and locomotive engines and cars causes continually loud, grinding and jarring noise and vibration.

The operation of the engines and boilers causes clouds of steam and vapor and other substances to enter the apartments of the plaintiff, making the use and occupation of the apartments physically uncomfortable to him and his tenants, and their peace and quiet have been disturbed, as a result of which the rental value of the apartments has decreased and plaintiff's property has decreased in value.

The defendant cannot escape liability for damage which has been caused this plaintiff upon the ground that it is engaged in a great public work which it is conducting in a careful and prudent manner. While it is true that the building of this subway is a great public improvement, yet this defendant is engaged in the work for private gain and it has selected this plot of land not because it is absolutely necessary to utilize this plot in the construction of the subway, but because it is more convenient and more profitable to use the plot as a store yard and a place from which its operations may be carried on, rather than to utilize portions of Eastern Parkway which could be used although not so conveniently, or by establishing at various points along the work of construction smaller plants for the carrying on of the work.

I am satisfied that the plaintiff has suffered considerable damage, greater than he should be compelled to suffer for the benefit of the public generally. But to enjoin the defendant from the use of this plot of

land would mean the delay to a great public improvement and a tremendous cost to the defendant for the erection and construction of other store yards or places in which this work could be carried on. Money damages will undoubtedly compensate the plaintiff for the loss which he has and will sustain by reason of the operation of this plant, and, as was stated upon the trial, the question of fixing the amount of that damage will be sent to a referee, unless it can be agreed upon by the parties.

An interlocutory judgment may be entered accordingly and upon the coming in of the referee's report a judgment may be entered permanently restraining the defendant from using said plot in violation of the plaintiff's rights, unless it pay such damages as may be found to reasonably compensate the plaintiff for his loss.

Ordered accordingly.